GEORGE BERNIER v. ST. PAUL GASLIGHT COMPANY.[1]

May 20, 1904.

Nos. 13,873—(119).

**Negligence—Electric Wires.**

    This is an action to recover for personal injuries sustained by the plaintiff by reason of the negligence of the defendant in failing to keep certain electric wires properly insulated near which the plaintiff was required to work. *Held* that:

    1. The question of the plaintiff's assumption of the risk, and his alleged contributory negligence, were, under the evidence, for the jury.

    2. Expert evidence as to how long before the plaintiff's injury the defect in the insulation of the wires occurred was admissible.

    3. An award of $3,250 for the loss of the entire thumb of plaintiff's left hand and the loss of the index finger of his right hand was not excessive.

Action in the district court for Ramsey County by George Bernier, a minor, by his guardian ad litem, to recover $15,000 for personal injuries. The case was tried before Brill, J., and a jury, which rendered a verdict in favor of plaintiff for $3,250. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*George W. Buffington* and *Frederick V. Brown,* for appellant.
*Samuel A. Anderson* and *Mart M. Monaghan,* for respondent.

---

[1] Reported in 99 N. W. 788.

START, C. J.

On June 12, 1903, the plaintiff, a minor twenty years old, was in the employ of the defendant, and while painting one of its poles, upon the cross-arms of which electric wires were strung, he received an electric shock which resulted in the loss of the index finger on his right hand and the whole of his thumb on his left hand. He brought this action to recover damages for his injury, which he claims was caused by the defendant's negligence.

The specific acts of negligence charged in the complaint are that two of the wires which were heavily charged with electricity, between which the plaintiff was obliged to go and be in painting from the top of the pole to a point below the wires, were too close together for safety; that the defendant negligently permitted the wires near the place where it was necessary for the plaintiff to be while doing his work to become bare of insulation, and so exposed that any person touching the wires at the exposed places would receive a heavy shock of electricity; and, further, that the defendant neglected to instruct and warn the plaintiff of the dangerous character of the place in which he was required to work. The complaint further alleged, in effect, that the plaintiff, while lowering himself with due care between the two wires for the proper execution of the work he was required to do, received a shock from the wires by reason of their defective insulation and their close proximity to each other; that to save himself from falling he involuntarily grasped the wires, and thereby received the injury complained of. The answer, so far as here material, was a general denial. The trial of the action resulted in a verdict for the plaintiff for $3,250, and the defendant appealed from an order denying its blended motion for judgment notwithstanding the verdict, or for a new trial.

The evidence fairly sustains the finding of the jury to the effect that the defendant was guilty of negligence in the premises, which was the direct cause of the plaintiff's injury. No claim to the contrary is made on this appeal, but it is earnestly contended by the defendant that the plaintiff must be held, as a matter of law, to have assumed the risk of injury to himself while working at the place assigned to him.

The rule as to the assumption of risks by an employee is so definitely settled by the decisions of this court that it is only necessary to briefly

state it. It is this: If the instrumentalities or the place for the performance of the servant's duties are defective or unsafe, and the servant not only knows this, but also knows, understands, and appreciates, or ought in the exercise of ordinary prudence to understand and appreciate, the risks to which such defect or unsafe place expose him, he assumes the risks incident to the use of such defective instrumentalities or unsafe place. Blom v. Yellowstone Park Assn., 86 Minn. 237, 90 N. W. 397. The servant, however, does not assume the risks arising out of the negligence of the master, and, in the absence of notice, actual or constructive, to the contrary, the servant has a right to presume that the master has discharged his duty as to providing safe instrumentalities and place for the work. Delude v. St. Paul City Ry. Co., 55 Minn. 63, 56 N. W. 461.

If we accept, as we must for the purpose of this appeal, the most favorable view for the plaintiff, of the evidence relevant to this question of the assumption of risks, the following facts were established: The plaintiff was a minor twenty years old at the time he was injured, and had then been in the service of the defendant for about one month. His work was painting the defendant's electric light poles. For some four years prior to his employment by the defendant he worked for a telephone company, erecting poles, putting up cross-arms, and stringing new wires. He had also worked for one month in the shop of an electric signmaker. He knew that the defendant had an electric department, and that its wires were for the purpose of conveying electricity, but he did not fully understand the danger of working in close proximity to live wires. He had never before worked around or among live wires. He was not instructed or warned as to the condition of the wires among which he was to work, except that some time before the accident the foreman of the defendant told him that on some poles the plaintiff was then about to paint there were some wires which were charged, but that he would send a crew to change the wires and place them out on the cross-arms away from the poles, so that the plaintiff could go on with his work. The wires were so placed out from the poles.

At the time the plaintiff was injured he climbed, with the aid of climbers or spurs, to the top of the pole, which had three cross-arms

upon which wires were strung.   In doing so he passed safely between the two wires in question, and began painting the pole at the top, and worked downward.   When he got down to the third arm and between the wires, it was necessary to change his safety belt.   While in this position, and so occupied, he received a shock, and in attempting to take hold of the cross-arm to prevent his falling, his hands came in contact with a portion of the wires, whereby he received the injuries stated in his complaint.   He became unconscious, and on recovering his senses he discovered that a strip from four to six inches in length of the insulation on each wire was gone.

Upon the whole evidence bearing upon the question of the plaintiff's assumption of the risks, we are clearly of the opinion that, in view of his age, experience, and all the facts disclosed by the evidence, the question was one of fact for the jury.

Counsel for the defendant cites and relies upon the case of Anderson v. C. N. Nelson Lumber Co., 67 Minn. 79, 69 N. W. 630, in support of his claim that the plaintiff in this case assumed the risk.   In that case the instrumentality was an unguarded circular saw making some three or four thousand revolutions per minute, and the operator who was injured by the saw was a man twenty-two years old, who had had three or four years' experience as a sawyer, and was familiar with machinery.   It was held as a matter of law, upon the facts stated, that the dangers were obvious, and that the plaintiff must have known and appreciated the risks.   The facts in the case cited are so radically different from the facts in the one here under consideration that it is not in point.

The question of the plaintiff's contributory negligence in this case was also a question for the jury.   The plaintiff offered the testimony of a competent witness, who examined the defective wires in question forty-eight hours after the plaintiff's injury, and he was permitted to testify, over the defendant's objection, that the wires were not insulated at a point near the pole on the third cross-arm; and, further, gave his opinion that the wires had been in that condition for some months. The ruling of the trial court in receiving this evidence is assigned as error.   The first reason urged in support of this claim of error is that the testimony related to a period of time too remote from the accident, and, further, that the probable length of time the wires had been bare

of insulation was not a proper question for expert evidence. The plaintiff testified that he noticed the absence of insulation on the wires immediately after he was injured, and it became important, as bearing on the question of the defendant's negligence, to give evidence tending to show how long this defect in the wires had existed. The subject of insulation on electric wires is not a matter of such general knowledge as to exclude expert evidence on the subject. Opinion evidence was then admissible to show how long before the accident the insulation on the wires was worn off. Anderson v. Fielding, supra, page 42. The trial court did not err in its rulings as to the admission of evidence.

The last alleged error is that the court should have granted a new trial for the reason that the damages were excessive. The plaintiff lost the entire thumb of his left hand, which was cut out of the palm, and the entire index finger of the right hand. He will be seriously and permanently handicapped by such injuries, in the struggle to win life's support by manual labor. If he has the ability to succeed in some profession or business not involving manual labor, it will be years before he can qualify himself for the change; and if, perchance, he is successful in such new field of labor, it will not restore his disfigured and crippled hands to their original strength and shapeliness. We are of the opinion that the damages awarded by the jury are not excessive, but only fairly compensatory.

Order affirmed.